08 CV 4146

Donato Caruso [DC 7565]
William M. Spelman [WS 3585]
James R. Campbell [JC 0237]
THE LAMBOS FIRM
29 Broadway, 9th Floor
New York, New York 10006
(212) 943-2470

*Attorneys for Plaintiff*
*United States Maritime Alliance*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
MAY 0 1 2008
U.S.D.C. S.D. N.Y.
CASHIERS

----------------------------------------------------------------  x

UNITED STATES MARITIME ALLIANCE, LTD.,

                   Plaintiff,

        - v. -

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, AFL-CIO,

                Defendant.

----------------------------------------------------------------  x

**ECF Case**

**COMPLAINT**

**Case No. 08-cv-    (    )**

Plaintiff United States Maritime Alliance, Ltd. by and through its attorneys, The

Lambos Firm, as and for its complaint, respectfully alleges as follows:

**JURISDICTION AND VENUE**

1.     This is an action pursuant to 28 U.S.C. § 2201 seeking a declaration that a

matter is not arbitrable under a collective bargaining agreement between Plaintiff United

States Maritime Alliance, Ltd. and Defendant International Longshoremen's Association,

AFL-CIO, entitled the "Master Contract between United States Maritime Alliance, Ltd.

(For and on Behalf of Management) and International Longshoremen's Association,

AFL-CIO (For and on Behalf of Itself and Each of Its Affiliated Districts and Locals

Representing Longshoremen, Clerks, Checkers and Maintenance Employees Working On

Ships and Terminals in Ports on the East and Gulf Coasts of the United States)" (hereinafter referred to as the "Master Contract"). This action also seeks a stay and a permanent injunction.

2.    This court has subject matter jurisdiction to entertain this proceeding pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and pursuant to 28 U.S.C. § 1331.

3.    Venue in this court is proper pursuant to 28 U.S.C. § 1391(b) and LMRA § 301(a), 29 U.S.C. § 185(a), since Defendant is found, does, and transacts business in this district, maintains its principal office in this district, and its duly authorized officers and agents are engaged in representing or acting for employee members in this district.

## PARTIES

4.    Plaintiff United States Maritime Alliance, Ltd. (USMX) is a Delaware, non-profit membership corporation that is the collective bargaining representative for employers of longshore workers on the Atlantic and Gulf Coasts of the United States. USMX's membership consists of shipping companies that transport or carry cargo by sea in international trade and commerce (also known as carriers), individual stevedoring companies and marine terminal operators that load and unload the carriers' ships, and port associations that represent carriers and stevedoring companies in local port negotiations. USMX's principal functions are labor-contract negotiations and labor-contract administration, focusing predominantly upon the longshore industry's Master Contract. USMX also negotiates and administers a labor contract with the South Atlantic and Gulf Coast District of the International Longshoremen's Association, AFL-CIO, concerning the maintenance and repair of carriers' equipment in a range of South Atlantic

ports from Wilmington, North Carolina to Jacksonville, Florida. USMX does not negotiate or administer any local longshore labor contracts in any port. USMX's principal office is located at 485 Route 1 South, Building C, Suite 100, Iselin, New Jersey 08830.

5.     Defendant International Longshoremen's Association, AFL-CIO (ILA International), is an international labor organization that is the exclusive collective bargaining representative for waterfront workers employed on the Atlantic and Gulf Coasts. The ILA International's functions include the negotiation and administration of the Master Contract. The ILA International does not negotiate or administer any local longshore labor contract in the Port of Baltimore, Maryland. Its principal office is located at 17 Battery Place, Suite 930, New York, New York 10004.

## NON-PARTIES

6.     Local 953, International Longshoremen's Association, AFL-CIO (Local 953) is a labor organization affiliated with the ILA International that represents certain waterfront workers in the Port of Baltimore, Maryland. Local 953 is a party to collective bargaining agreements with the Steamship Trade Association of Baltimore, Inc.

7.     The Steamship Trade Association of Baltimore, Inc. (STA) is the multiemployer collective bargaining representative for employers of longshore workers in the Port of Baltimore. STA negotiates and administers labor contracts with Local 953 and other ILA locals representing waterfront workers in the Port of Baltimore, prescribing the local terms and conditions of employment for these waterfront workers. STA is comprised of carriers, stevedoring companies, and marine terminal operators that operate in the Port of Baltimore.

3

8.    Ports America, Inc. (formerly known as P&O Ports Baltimore, Inc. and referred to herein as "Ports America") is a marine terminal operator in the Port of Baltimore that employs waterfront workers represented by Local 953 and is a member of STA.

## HISTORY OF COLLECTIVE BARGAINING
## IN THE EAST AND GULF COAST LONGSHORE INDUSTRY

9.    Collective bargaining in the East and Gulf Coast longshore industry is a two-step process.  First, USMX and the ILA International negotiate a multi-port Master Contract that establishes certain key terms and conditions of employment that are applied uniformly with certain exceptions to all longshore workers engaged in the loading and unloading of commercial containerized cargo ships at East and Gulf Coast ports.  The current Master Contract was executed on June 28, 2004, by USMX and the ILA International and was effective October 1, 2004.

10.    The second step in the collective bargaining process begins when the Master Contract negotiations are concluded.  It involves negotiations in the individual ports between management port associations, such as STA, and ILA-affiliated local unions, such as Local 953, concerning local terms and conditions of employment in those ports.

## GRIEVANCE PROCEDURES
## UNDER THE MASTER CONTRACT

11.    The Master Contract contains two grievance procedures.  The general grievance procedure that governs most disputes arising under the Master Contract is set forth in Article XIII of the Master Contract.  A copy of Article XIII is annexed hereto as

Exhibit A. It covers "all disputes under this Master Contract involving containerization and ro-ro, including interpretations of this Master Contract."

12.    The general grievance procedure may involve as many as three steps. Disputes under the Master Contract are presented initially to the Local Industry Grievance Committee (LIGC). Appeals of LIGC decisions are presented to the Industry Appellate Committee (IAC). If the hearing before the IAC results in a deadlock, the matter may be referred to private arbitration.

13.    The second grievance procedure, which is set forth in Article X of the Master Contract, applies only to grievances involving new technology. A copy of Article X is annexed hereto as Exhibit B. Grievances under Article X are limited to the impact of new technology on the workforce, including any workers who may be displaced.

## GRIEVANCE PROCEDURE UNDER THE LOCAL BALTIMORE CONTRACT

14.    The local collective bargaining agreement to which Local 953, Ports America, and STA are parties contains a grievance procedure. Article III, section 1 of that local contract provides that "any dispute, disagreement or controversy . . . between an Employer or Employers and their Employees or the Union" shall be resolved pursuant to the grievance procedure. A copy of Article III of the local collective bargaining agreement, which is entitled "Agreements Negotiated by the Steamship Trade Association of Baltimore, Inc. on Behalf of its Members with the International Longshoremen's Association Local 953 for the Port of Baltimore Effective October 1, 2004 Through September 30, 2010," is annexed hereto as Exhibit C.

## THE UNDERLYING DISPUTE

15.    On March 28, 2006, Local 953, pursuant to the Master Contract grievance procedure, submitted to the LIGC in Baltimore a grievance asserting that "various steamship lines and Management have violated the Master Contract by infringing work related to the delivery of containers (container seals) at waterfront facilities (Seagirt Marine Terminal)." A copy of the grievance is annexed hereto as Exhibit D.

16.    A container is typically a 20- or 40-foot steel or aluminum box used in the transportation of cargo. A container is a versatile piece of equipment which can be loaded onto and discharged from an ocean-going vessel and placed on a truck chassis or rail car to be transported to or from an inland destination.

17.    A container seal is a device affixed to the doors of a container loaded with cargo that is designed to enable those involved in the transportation of a container to determine whether anyone has tampered with the contents of the container. The container doors cannot be opened without permanently damaging the container seal. If the container seal is damaged or missing, there is a possibility that some of the contents of the container may have been stolen, lost, or damaged.

18.    A truck driver may be held responsible for the loss of cargo while the container is in his possession. As a result, a truck driver will inspect the container seal after the container has been unloaded from a vessel and before the container leaves the marine terminal facility. The trucker does this to determine whether the seal is intact and whether the numeric code on the seal matches the numeric code on the truck driver's paperwork relating to the seal on the container. If the trucker fails to inspect the seal

before accepting receipt of the container and draying it from the marine terminal, the trucker could be liable for any cargo loss.

19.     Seagirt Marine Terminal (SMT) is a marine terminal facility located in the Port of Baltimore. Ports America is the marine terminal operator at SMT.

20.     Ports America handles approximately 1,000 import containers per day that exit the marine terminal. There is an average of approximately three or four broken container seals per 1,000 containers at SMT.

21.     While Local 953 has never explained precisely what actions by Ports America relating to the container seals constituted the alleged violation of the Master Contract set forth in its grievance, it appears that Local 953 in its grievance was objecting to the truck drivers' inspection of the seals and sought to have its members, instead of truck drivers, inspect the container seals on all containers exiting SMT.

22.     Ports America does not have any commercial reason to inspect the seals of import containers prior to their leaving the marine terminal facility and thus has not assigned that task to employees represented by Local 953.

23.     At the same time Local 953 was pursuing its container-seals grievance, Local 953 and Ports America were also engaged in a dispute concerning the introduction of new technology at SMT.

24.     Subsequently, on August 2, 2006, Local 953, Ports America, and STA entered into agreements that resolved both the container-seals grievance and the new-technology dispute. Copies of the agreements are annexed hereto as Exhibit E. USMX and the ILA International neither negotiated nor are parties to any of these agreements.

25.    From August 2, 2006, through November 7, 2007, the individual truck drivers, not members of Local 953, continued their inspections of container seals on loaded import containers at SMT.  During that fifteen-month period, Local 953 did not raise any issue concerning the truck drivers' continued inspection of the container seals or the failure of Ports America to have employees represented by Local 953 also inspect those seals.

26.    During an IAC hearing on November 8, 2007, the inspection of container seals became the subject of discussion.  Representatives of Ports America, STA, and Local 953 discussed their conflicting interpretations of their August 2, 2006, agreements insofar as they related to the inspection of container seals at SMT.  Although the consensus of the IAC was that the local parties should abide by their August 2, 2006, agreements, the IAC did not resolve the dispute.

27.    Since November 8, 2007, Local 953, Ports America, and STA have been meeting concerning the parties' respective interpretations of their August 2, 2006, agreements on the container-seals grievance.  Neither USMX nor the ILA International has attended these meetings.

28.    On or about February 12, 2008, counsel for the ILA International sent to counsel for USMX a demand for the commencement of an arbitration proceeding between USMX and the ILA International under the Master Contract asserting that "[m]embers of USMX in the Port of Baltimore have infringed upon the ILA's contractual work jurisdiction relating to the delivery of containers and inspection of container seals in violation of Article VII, Sections 1, 2 and 4, Article VIII, Sections 1 through 3, and

Appendix A of the Master Contract." A copy of the demand was sent to Arbitrator John E. Sands. A copy of the demand for arbitration is annexed hereto as Exhibit F.

29.    Counsel for the ILA International, by letter dated March 18, 2008, a copy of which is annexed hereto as Exhibit G, requested that Arbitrator Sands schedule a hearing concerning the dispute. Counsel for the ILA International acknowledged that USMX and the ILA International disagree concerning whether the matter is arbitrable under the Master Contract.

30.    On March 25, 2008, counsel for the ILA International and counsel for USMX had a telephone conference with Arbitrator Sands. Arbitrator Sands agreed to hold the arbitration in abeyance until USMX filed a court action seeking a stay of the arbitration. Arbitrator Sands also stated that the court's decision concerning the arbitrability of the dispute would determine whether the arbitration will proceed. A copy of the March 26, 2008, confirmatory letter from counsel for USMX to Arbitrator Sands is annexed hereto as Exhibit H. The March 26, 2008, letter refers to an April 24, 2008, deadline for USMX to commence this action. The parties subsequently agreed to extend until May 1, 2008, the deadline for filing this action. A copy of the letter to Arbitrator Sands concerning the extension of the deadline is annexed hereto as Exhibit I.

## CAUSE OF ACTION

31.    Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 30, inclusive, as though fully set forth at length herein.

32.    The dispute between Ports America and Local 953 as to the interpretation of the August 2, 2006, agreements concerning whether and in what fashion those agreements resolved the container-seals grievance is not subject to arbitration between

USMX and the ILA International under the Master Contract because it involves a dispute between parties to those August 2, 2006, agreements concerning the interpretation of those local agreements, which is not a dispute under the Master Contract.

33.    The collective bargaining agreement between STA and Local 953 provides a grievance and arbitration mechanism for Local 953 and Ports America to resolve their dispute over the interpretation of their August 2, 2006, agreements.

34.    Until the question, whether Ports America and Local 953 settled the container-seals dispute in their August 2, 2006, agreements has been resolved, there can be no arbitrable controversy under the Master Contract relating to the container-seals dispute.

35.    If USMX were compelled to arbitrate the container-seals dispute before the disposition of the dispute involving the interpretation of the August 2, 2006, agreements has been resolved under the grievance and arbitration provisions of the STA-Local 953 collective bargaining agreement, USMX would be forced to incur costs, including attorneys' fees, on a matter that is not arbitrable by USMX and the ILA International under the Master Contract, and USMX would not be able to recoup the costs it would incur during the arbitration.

36.    An actual controversy within the meaning of 28 U.S.C. § 2201 exists regarding the arbitrability of the dispute between USMX and the ILA International under the Master Contract.

37.    This matter has not previously been the subject of a judicial proceeding.

38.    USMX has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this court issue a judgment:

(a)    Declaring that the container-seals dispute in the Port of Baltimore is not subject to arbitration between USMX and the ILA International under the Master Contract;

(b)    Staying the arbitration proceeding commenced by the ILA International against USMX before Arbitrator Sands on February 12, 2008;

(c)    Permanently enjoining the commencement of any arbitration proceeding against USMX regarding the container-seals dispute in the Port of Baltimore until the dispute involving the interpretation of the August 2, 2006, agreements has been resolved under the grievance and arbitration provisions of the STA-Local 953 collective bargaining agreement;

(d)    Retaining jurisdiction of this action for the purpose of giving plaintiff such other and further relief as may be necessary in order to achieve a result consistent with the objectives of the grievance and arbitration provisions of the Master Contract;

(e)    Awarding to plaintiff the costs of this action; and

(f)    Granting plaintiff such other and further relief as this court may deem just and proper.

Dated:  New York, New York
        May 1, 2008

                              Respectfully submitted,

                              THE LAMBOS FIRM

                              By: _____
                                  Donato Caruso [DC 7565]
                                  William M. Spelman [WS 3585]
                                  James R. Campbell [JC 0237]
                                  29 Broadway, 9th Floor
                                  New York, New York 10006
                                  (212) 943-2470
                                  *Attorneys for Plaintiff*
                                  *United States Maritime Alliance, Ltd.*

90904

12

**EXHIBIT A**

# MASTER CONTRACT

between

## UNITED STATES
## MARITIME ALLIANCE, LTD.
(For and on Behalf of Management)

and

## INTERNATIONAL
## LONGSHOREMEN'S
## ASSOCIATION, AFL-CIO
(For and on Behalf of Itself and Each of Its
Affiliated Districts and Locals Representing
Longshoremen, Clerks, Checkers and
Maintenance Employees Working On Ships
and Terminals in Ports on the East and
Gulf Coasts of the United States)

Effective October 1, 2004 For The Six-Year Term
Expiring on September 30, 2010



pension plan, and such retiree will qualify for coverage under MILA's Basic Plan, as may be modified, until such retiree becomes sixty-two (62) years of age, when the retiree will become eligible to be covered under MILA's Premier Plan, as may be modified, until such retiree becomes eligible for Medicare, at which time such retiree's MILA benefits will be limited to Medicare wraparound benefits.

(d)     Any former employee who no later than September 30, 2004, is no longer in the industry but has sufficient service to qualify for a vested pension benefit upon the attainment of the age of sixty-five (65) and who is also entitled to receive MILA benefits as of September 30, 2004, shall be eligible to receive MILA Medicare wraparound benefits when he attains the age of sixty-five (65). Any individual employee who leaves the industry after September 30, 2004, without retiring and who is eligible for a vested pension benefit when he leaves the industry shall not be eligible to receive any MILA benefits when he retires.

**Section 6.    Plan Amendments.**
The MILA plan in effect on September 30, 2004, shall be amended to adopt the following plan provisions:

(a)     The co-pay shall be $15.00 per visit to a primary care physician ("PCP") and $30.00 per visit to a specialist in the Premier Plan and $25.00 per visit to a PCP and $40.00 per visit to a specialist in the Basic Plan, but there shall be no co-pay for an annual physical.

(b)     The payment rate for out-of-network services shall be sixty (60) percent of reasonable and customary eligible charges, and the out-of-pocket annual benefit limits that apply to out-of-network charges shall be $6,500 per individual and $13,000 per family.

(c)     There shall be a $500 annual pharmacy family deductible for all active employees and all retirees (including Medicare-eligible retirees) for brand-name drugs only

26

except for those brand-name drugs for which there is no comparable generic substitute as determined by the MILA trustees. This deductible replaces the $500 pharmacy deductible that is currently in place in the MILA plan.

**Section 7.    Creation of Core Plan.**
The MILA trustees shall place in effect by January 1, 2006, MILA's Core Plan, which shall provide lesser benefits than those provided by MILA's Basic Plan.

## ARTICLE XIII
## GRIEVANCE PROCEDURE

**Section 1.    Local Level.**
All disputes under this Master Contract involving containerization and ro-ro, including interpretations of this Master Contract, shall be heard initially by the Local Industry Grievance Committee ("LIGC"), which shall consist of the following: three (3) Management representatives (a representative of USMX; a representative of the local port association where the dispute arose; and a local stevedore or terminal operator) and three (3) representatives appointed by the ILA. Requests for interpretations may be brought at any time. The LIGC shall reach a decision within ten (10) days after either a charge has been filed of an alleged violation or a request filed seeking an interpretation.

**Section 2.    Appellate Level.**
Where there is a failure to render a decision on the local level or where a party desires to appeal any decision rendered on the local level, such cases may be referred to the Industry Appellate Committee ("IAC").

**Section 3.    Appeals From a Decision of the LIGC.**
Appeals from a decision of the LIGC must be taken within twenty (20) days after a decision has been reached and the parties notified or within twenty (20) days from the deadline referred to in Section 1 of this Article XIII for the LIGC to reach a decision.

27

**Section 4.    Appeals Form.**

All appeals must be taken on an appellate form prepared by USMX and the ILA.

**Section 5.    Industry Appellate Committee.**

(a)    **Number of IAC Members.** The IAC shall be comprised of sixteen (16) representatives of Management and sixteen (16) representatives of the ILA.

(b)    **Co-Chairmen.** The President of the ILA shall be Co-Chairman of the Union members of the IAC and the Chairman/CEO of USMX shall be the Co-Chairman of the Management members of the IAC.

(c)    **Telephonic Notice.** Either Co-Chairman may call the IAC into session on short notice by telephone with fax confirmation to the other Co-Chairman and Executive Secretary.

(d)    **Quorum.** The Co-Chairmen may agree between themselves in special cases to call into session an IAC meeting with less than sixteen (16) members on each side provided that not less than six (6) such members on each side including the Co-Chairmen are convened to hear and determine a dispute. The IAC may hear and determine a dispute by telephone or video-telephone conference on the request of either Co-Chairman.

(e)    **Majority Vote.** Decisions by the LIGC and the IAC shall be rendered by a majority vote thereof. Decisions by the IAC shall be final and binding and shall constitute an enforceable award.

(f)    **Multi-Port Charges.** Charges of alleged violations of this Master Contract involving more than one (1) port shall be referred directly to the IAC for a final determination.

(g)    **Failure to Appear.** If after due and timely notice, either party fails to appear at a meeting of the LIGC or IAC, then the other party may proceed and hear the matter and issue a decision unilaterally.

**Section 6.    Arbitration.**

(a)    **Panel of Arbitrators.** The Co-Chairmen shall provide for a panel of at least five (5) and no more than ten (10) named arbitrators who shall serve as the permanent arbitrators of the IAC during the term of this Master Contract. The Labor Arbitration Rules of the American Arbitration Association then in effect shall be utilized in such selection process.

(b)    **Selection of Arbitrator.** If the IAC shall be unable to resolve matters referred to it, the Co-Chairmen shall seek to select an arbitrator immediately after the IAC deadlocks. If no such selection is made immediately (on the same day as the deadlock), within a ten (10) day period either party may refer the matter to the arbitrator next in line who is available in accordance with the selection system.

(c)    **Selection System.** An arbitrator shall be selected by the Executive Secretary pulling the name of the arbitrator by lottery. This first available arbitrator shall hear and determine the first dispute. After the first selection and thereafter, the lottery shall only include the names of the remaining arbitrators until all arbitrators have been selected in order of their being drawn. For each selection, arbitrators shall be listed in the order of drawing so that the arbitrator first indicating his availability shall be given the assignment. The Co-Chairmen are hereby authorized to oversee such selection and to exercise their discretion in such selection process.

(d)    **Expedited Arbitration.** Any party to this Master Contract may, with respect to any grievance, dispute, complaint or claim arising out of or relating to the Master Contract at any point waive any and all preliminary steps of the grievance machinery and submit the matter to arbitration ("expedited arbitration") at any time after a matter has been considered by the Co-Chairmen. Such requests shall be made in writing by the President of the ILA or the Chairman/CEO of USMX, as the case may be, or their designees. Such writing may be by telegram or a letter hand delivered to the office of the other party. Telephonic or telegraphic notice shall be given at the same time to a member of the arbitration panel who shall immediately thereafter (and not later than twenty-four (24) hours after receipt of such notice) convene an arbitration hearing at such place as the arbitrator shall determine, including the work place where the dispute arose.

(e) **Failure to Appear.** In the event any party fails to appear at any arbitration, including an expedited arbitration hearing, the party failing to appear shall be deemed to have waived its right to contest its non-participation, and the arbitrator shall proceed forthwith to determine the issue.

(f) **Award.** In an expedited arbitration the arbitrator shall issue a short form award at the end of the hearing unless the time to render an award is extended by mutual consent. The arbitrator shall have the right to issue a more detailed decision within thirty (30) days after the rendition of such short form award setting forth the reasons for his award. As to all other arbitrations, the arbitrator shall issue his award as expeditiously as possible. If an award is not rendered within thirty (30) days (unless both parties agree to extend such time period) either party shall have the right to terminate the services of that arbitrator who shall be replaced in accordance with the procedures set forth in Section 6(c) of this Article XIII. If the arbitrator is disabled and is thereby prevented from rendering a decision within thirty (30) days, or if the arbitrator fails to render a decision within thirty (30) days, the parties shall refer the record and briefs to the next arbitrator for decision unless either party objects to such procedure, in which event a new and expedited hearing shall be held.

(g) **Right to Strike.** The ILA shall have the right to refuse to render service to any carrier or direct employer who fails or refuses to abide by the final decisions of the LIGC (if not appealed) or IAC after having been found to have violated any provisions of the Master Contract until said carrier or direct employer comes into full compliance with said decision. The provisions of any "no-strike" clause shall not be applicable in any such situation.

**Section 7. Regular IAC Meetings.**
The IAC shall meet regularly at least three (3) times per year to review the implementation of the Master Contract and the objectives of both parties to develop a dynamic, growth-oriented industry that addresses job opportunities for the work force through competitive and efficient utilization of manpower to meet the needs of the industry. The Co-Chairmen shall fix the date, place, and time of such regular meetings.

30

**Section 8. Industry Resource Committee.**
The Management-ILA Industry Resource Committee consisting of the Co-Chairmen and seven (7) representatives on each side appointed by each Co-Chairman shall continue in effect for the purpose of considering major industry problems which require consideration for the benefit of Management, the ILA and the employees and which shall serve as a Master Contract planning committee to consider such agendas as may be brought before them by agreement of the Co-Chairmen.

**Section 9. Disputes Among Fund Trustees.**
Any dispute arising among the trustees of the CPS Fund, the CR-4 Fund, MILA, or any other fund whose trustees are appointed pursuant to any of the trusts created under this Master Contract shall be referred and determined in accordance with the arbitration procedures created under the terms of the applicable trust agreement. The trustees of these Master Contract funds shall also enforce the collection of any and all assessments provided under this Master Contract, and all carriers, employers, ILA locals and officials, port associations, local fund trustees, beneficiaries, and other persons claiming any rights or benefits under the Master Contract funds shall be bound by the terms of any directives or awards issued by the trustees of these Master Contract funds, which shall have the full force and effect of arbitration awards and shall be enforceable in the same manner as arbitration awards.

**ARTICLE XIV**

**ACCOMMODATIONS**

**Section 1. Existing Accommodations.**
Every accommodation in effect on September 30, 2004, shall continue in effect during the term of this Master Contract. The accommodations in effect as of October 1, 1996, are found in the Appendix attached to the Agreement as of October 1, 1996, which Appendix was executed by the parties on November 21, 1996, and became effective as of October 1, 1996. The accommodations that went into effect after October 1, 1996, and remained in effect as of September 30, 2004, are found in the March 22, 2002 Memorandum To All

31

**EXHIBIT B**

# MASTER CONTRACT

between

## UNITED STATES
## MARITIME ALLIANCE, LTD.
(For and on Behalf of Management)

and

## INTERNATIONAL
## LONGSHOREMEN'S
## ASSOCIATION, AFL-CIO

(For and on Behalf of Itself and Each of Its
Affiliated Districts and Locals Representing
Longshoremen, Clerks, Checkers and
Maintenance Employees Working On Ships
and Terminals in Ports on the East and
Gulf Coasts of the United States)

Effective October 1, 2004 For The Six-Year Term
Expiring on September 30, 2010



conditions of the grievance procedures agreed to by the parties in this Master Contract. If it is determined under such grievance procedure that the container in question should have been repaired, the carrier shall pay liquidated damages of $1,000 per container ($2,000 per container for willful violations), as ruled in such determination. Fact-finding and audit under the grievance procedure shall be provided by an independent auditor selected by the parties who shall have the right to audit all applicable documentation by a carrier to determine compliance with this Master Contract. Such audit shall be available to the grievance procedure and may be used to establish compliance or the lack thereof.

## ARTICLE X
## NEW TECHNOLOGY

**Section 1.    Impact on Employees.**

Where new devices and new methods are utilized, it is recognized that these make the ILA more competitive and their employers more able to provide continued employment. Management also agrees that the impact on employees with the ILA shall be the basis for prior discussions with the ILA. It is agreed that all affected employees who held the positions which have become impacted and discontinued by technology will be afforded the opportunity for retraining at Management's expense to acquire the necessary skills for employment in this industry. Employment positions within the ILA work jurisdiction resulting from technological changes will be offered to ILA employees affected by such changes to the extent that they are able to perform such work with reasonable training. Persons trained under such a program must accept jobs so offered.

**Section 2.    Notification.**

Management shall discuss the impact of the new technology on the workforce with ILA representatives. An employer shall be required to notify in writing the ILA representatives in the local port area of the employer's intended introduction of new technology no later than one hundred eighty (180) days prior to the scheduled date of the employer's implementation of the new technology.

16

**Section 3.    Grievance.**

On failure to reach agreement, the new technology shall not be placed in effect but held in abeyance for a maximum period of sixty (60) days after either side has filed a grievance provided the grievance is filed no later than the sixtieth (60th) day after the issuance by the employer of the notice to ILA representatives in the local port area. The grievance shall be heard and resolved by a three-person panel. The panel shall consist of one (1) person selected by the ILA, one (1) person selected by Management, and an arbitrator selected pursuant to the procedures set forth in Article XIII, Section 6 of this Master Contract. A grievance may be filed only as to the impact of new technology on the workforce including any workers who may be displaced.

**Section 4.    Time Limits.**

The following time limits shall be applicable:

(a) Filing of the grievance, and discussion thereafter for a maximum of twenty (20) days.

(b) On failure to agree, an expedited arbitration will be held and a determination to be issued by the panel on or before the sixtieth (60th) day after the filing of the grievance.

(c) The panel shall issue its decision within such 60-day period and the new technology may not be placed in effect by Management until after the panel's decision which shall have only prospective effect.

## ARTICLE XI
## CONTAINER ROYALTIES

**Section 1.    First and Third Container Royalties.**

The First and Third Container Royalties (effective in 1960 and 1977) each in the amount of $1.00 per weight ton of containerized cargo not stuffed or stripped by ILA-represented labor (with lesser amounts for containerized cargo carried on vessels that are not full container vessels as determined in the Stein Award, a copy of which

17

**EXHIBIT C**

AGREEMENTS

NEGOTIATED BY THE

STEAMSHIP TRADE ASSOCIATION

OF BALTIMORE, INC.

ON BEHALF OF ITS MEMBERS

WITH THE

INTERNATIONAL

LONGSHOREMEN'S

ASSOCIATION

LOCAL 953

FOR THE

PORT OF BALTIMORE

EFFECTIVE **OCTOBER 1, 2004**

**THROUGH SEPTEMBER 30, 2010**

hourly rate for each hour paid. Those monies so deducted shall be paid to the national headquarters of the ILA. by the fifteenth of the month following the end of each calendar quarter during which the Employee earned the wages.

Section 3. The Employers shall deduct from the wages of those Employees who so authorize them by written assignment or signed "check-off authorization" filed with the STA an amount of money, or percentage of wages earned, as directed by the Union from time to time. As of the effective date of this Agreement, that amount is one and one half percent (1-1/2%) of the straight time hourly rate for each hour, straight time and overtime, paid. Those monies deducted shall be paid to Local 953 by the fifteenth (15th) day of each month following the month in which the dues are withheld.

## ARTICLE III

### DISPUTES, DISAGREEMENTS OR CONTROVERSIES

Section 1. Should any dispute, disagreement or controversy, hereinafter called a grievance, arise between an Employer or Employers and their Employees or the Union during the term of this Agreement, the Employees shall continue to work pending the resolution of the grievance in the following manner:

A. The party initiating the grievance (Union or STA) shall give notice of the existence of the grievance as soon as possible to the other party.

B. A Committee of three persons designated by the STA, one of whom shall be a representative of the Employer or Employers involved as designated by the STA, and three persons designated by the Union, one of whom shall be the highest available resident official of the ILA, shall meet as soon as possible to attempt to resolve the dispute.

C. In the event of a deadlock by the Committee of Six on a grievance, the grievance may be submitted to arbitration by the Union or the Employer, but only by the Union or the Employer, in accordance with the following procedure:

1. Written notice of the submission of the grievance to arbitration shall be furnished by the party desiring arbitration to the other party within

10

twenty (20) days after the deadlock by the Committee of Six.  Within five (5) working days after receipt of the written notice of arbitration, the Employer and the Union are unable to agree upon the arbitrator within said five (5) days, the party desiring arbitration shall request Federal Mediation and Conciliation Service to submit to the Employer and the Union a list of seven (7) arbitrators limited to arbitrators who reside within Region 7 and are members of the National Academy of Arbitrators.  Within five (5) working days after receipt of the list of arbitrators, the Employer and the Union shall confer and shall alternatively strike names from said list until one (1) name remains who shall be the arbitrator to hear and determine the dispute.

2.    The fee and expenses of the arbitrator and the expense of the room here the arbitration hearing is held, if other than the offices of the STA or the Union, shall be shared equally by the Employer and the Union.

3.    The arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this agreement.  The arbitrator shall determine any question of arbitrability.

4.    The decision of the arbitrator shall be final and binding upon the Employer, the Union and the Employees covered by this Agreement.  A decision by the Union not to submit a grievance to arbitration shall also be final and binding upon the Employees covered by this Agreement.

## ARTICLE IV

### MINIMUM MANNING REQUIREMENTS

Section 1.  VESSELS

A.    Container Vessels, including barges, Ro/Ro, Lash and Sea-Bee.

1.    One shiprunner shall be employed the day before the vessel loads or unloads, all hours during which the vessel loads or unloads and the day after the vessel loads or unloads.  If the day before the vessel loads or unloads is a Sunday or Holiday, the Shiprunner shall be employed on the last work day before the Sunday or Holiday (including Saturday).  If the day after the vessel loads

11

**EXHIBIT D**

PORT OF BALTIMORE, MD
## LOCAL INDUSTRY GRIEVANCE COMMITTEE FORM

TO:      LIGC/STA of Baltimore

Address   947 Fell St., Swann's Wharf

          Baltimore, MD 21231-3505

Telephone #:  (410) 563-7314

Facsimile #:  (410) 563-7318

Claim #05-2006
Local 953 vs. S.S. Lines

        Under the Master Contract between Carriers Container Council, Inc., New York Shipping Association, Inc., Boston Shipping Association, Inc., Hampton Roads Shipping Association, New Orleans Steamship Association, Philadelphia Marine Trade Association, South Atlantic Employers Negotiating Committee, Southeast Florida Employers Port Association, Steamship Trade Association of Baltimore, West Gulf Maritime Association and the International Longshoremen's Association, AFL-CIO.

Grievance Submitted By:    ILA Local 953,
                    via STA-ILA Container Royalty Fund
                      (NAME & AFFILIATION)

           Address:  6610 Tributary St., 202 Taylor Bldg.,

                   Baltimore, MD 21224-6532

             Telephone:   410-633-9330

             Facsimile:   410-633-9360
             e-mail:   stailacontainerroyaltyfund@msn.com

State the nature of the grievance (use additional sheets as required):

Local 953 claims that various steamship lines and Management have violated the Master Agreement by infringing work related to the delivery of containers (container seals) at waterfront facilities (Seagirt Marine Terminal).

Local 953 claims that this work is under ILA jurisdiction.

                    *Richard P. Poremski*
                    Signature (On Behalf Of The Grievant)
                    Richard P. Poremski, Field Rep.
                    STA-ILA Container Royalty Fund
                    March 28, 2006
                    Date



# Steamship Clerks, Weighers and Timekeepers
# Local 953

## INTERNATIONAL LONGSHOREMEN'S ASS'N

Affiliated with AMERICAN FEDERATION OF LABOR

International Transportworkers Federation, Trades and Labor Congress of Canada

| | Walter Benewicz | Richard P. Hughes, Jr. |
| Phone: 727-0578 | 410-727-0578 | 410-727-0578 |
| 1345 HULL STREET | | |
| Baltimore, Md. 21230 | Phone: | Phone, |

March 28, 2006

Michael Angelos
S.T.A. of Baltimore, Inc
947 Fell St.
Baltimore, Md.  21231

Sir,

Please schedule a LIGC grievance for the following violations of the Master Contract by MSC, Evergreen America, Hatsu Marine, Italia Marittima SPA, Hyundai America Shipping Line, Yang Ming, Hamburg-Sud, CLIPAM, CHJ, Alianca Navegacao E Logistica, CCNI, Zim, Maersk, Safmarine, Lykes Line, Cosco, and CMA-CGM (America) Inc. MSC, Evergreen America, Hatsu Marine, Italia Marittima SPA, Hyundai America Shipping Line, Yang Ming, Hamburg-Sud, CLIPAM, CHJ, Alianca Navegacao E Logistica, CCNI, Zim, Maersk, Safmarine, Lykes Line, Cosco, and CMA-CGM (America) Inc. have violated the following Master Agreement sections by performing work related to the delivery of containers at waterfront facilities belonging to the jurisdiction of the I.L.A. at Seagirt Marine Terminal:

11-12.  ILA JURISDICTION OVER WORK COVERED BY
        THE MASTER CONTRACT  (1996)

**Containerization Agreement**
(A) Management hereby reaffirms that the ILA employee has jurisdiction over longshore, checker, maintenance and other ILA craft work conferred on such workers by the Containerization Agreement, set forth in the Appendix.

**Supervision and Management**
(D) The ILA work described in the jurisdiction provisions of the Master Contract is to be performed by ILA workers on the waterfront facility and not by supervision or other non-bargaining unit employees.

**Marine Terminal Work**

(G) It is recognized that the marine terminal work of the ILA crafts has traditionally been performed on pier and waterfront facilities. When such marine terminal work is moved off the marine terminal by the terminal operator or by a signatory carrier to facilities in the port area, the ILA shall retain its work jurisdiction, where the work is the work that would have been performed in the marine terminal or port area.

FINAL CLERICAL JURISDICTION MASTER CONTRACT LANGUAGE (2004)

Clerical Work

(B) Clerks shall perform all clerical work on container waterfront facilities which traditionally and regularly has been performed by them, including but not limited to work related to the receipt and delivery of cargo, hatchchecking, prestow, (hatch sequence sheet) plan clerking, recording of receipt and delivery of containers received or delivered at waterfront facilities, timekeeping, location and yard work, and demurrage recording, which work shall not be removed from the waterfront facility. The input and output of information by computers related to the foregoing work functions shall also be performed by Checkers and Clerks.

DATED: March 23, 2004

ATTACHMENT A- PAGE 1

FINAL JURISDICTION COMMITTEE GUIDELINES AND GLOSSARY OF TERMS

The members of the Jurisdiction Committee, in order to provide a framework to resolve outstanding issues regarding the jurisdiction of the ILA Clerks and Checkers, have agreed upon the following definitions and the statement of principle that will be used to define and identify the specific functions that fall within the ILA's jurisdiction.

In applying Section 11-12(B) of the Master Contract, members of the Jurisdiction Committee shall be bound by the following principle. Management and the ILA agree that the ILA Clerks and Checkers shall have jurisdiction over each and every function set forth in Section 11-12(B), which is performed on container waterfront facilities on behalf of signatory employers in each and every port covered by the Master Contract, provided that such function was at any time in the past performed by the ILA Clerks and Checkers in that port. It is further understood that clerical work currently performed by state port authorities or government agencies, if discontinued, will fall under the ILA's jurisdiction.

The following basic list of terms are intended to be descriptive and not all encompassing and are not intended to limit the jurisdiction or functions of the ILA

Clerks and Checkers as they exist under local agreements in the various ports covered by the Master Contract.

Unless there is agreement between the ILA in a local port and an employer in the local port, any deviation from the jurisdiction provisions of the Master Contract shall not constitute a waiver, amendment or rescission of the jurisdiction provisions of the Master Contract.

*   *   *   *   *   *

DATED: March 23, 2004

ATTACHMENT A- PAGE 3

The ILA is requesting a one thousand dollar ($1000.00) fine in liquidated damages for every container violation under the following terms of the **CONTAINERIZATION AGREEMENT** section 9. Violations of Agreement:

This agreement defines the work jurisdiction of employees and prohibits the subcontracting out of any of the work covered hereby. It is understood that the provisions of this Agreement are to be rigidly enforced in order to protect against the further reduction of the work force. Management believes that there may have been violation of work jurisdiction, of subcontracting clauses, and of this Agreement, by steamship carriers and direct employers. The parties agree that the enforcement of these provisions is especially important and that any violation of such other provisions is of the essence of the Agreement. The Union shall have the right to insist that any such violations be remedied by money damages to compensate employees who have lost their work. Because of the difficulty of proving specific damages in such cases, it is agreed that, in place of any other damages, liquidated damages of $1,000.00 for each violation shall be paid to the appropriate Welfare and Pension Funds.

Documentation is attached in regard to the particular container numbers and steamship lines involved in violations.

Sincerely,

Richard P. Hughes, Jr.
Business Agent

Cc: MSC
     : Evergreen America
     : Hatsu Marine
     : Italia Marittima SPA
     : Hyundai America Shipping Line
     : Yang Ming
     : Hamburg-Sud
     : CLIPAM
     : CHI
     : Alianca Navegacao E Logistica
     : CCNI
     : Zim
     : Maersk
     . Safmarine
     : Lykes Line
     : Cosco
     : CMA-CGM (American) Inc.
     : Horace Alston ILA
     : John Shade ACD
     : STA-ILA Container Royalty Fund


**************************************************************************************

## STA-ILA CRF Note:

As claim documentation, Local 953 has submitted Seagirt
Marine Terminal Container Pickup Cards, for various steamship lines,
for each container it considers to be in violation of the Master
Agreement.

The sampling provided for just 2 days is as follows:
March 27, 2006: 485 Containers
March 28, 2006: 393 Containers

**EXHIBIT E**

# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into by and between International Longshoremen's Association, Local 953 ("Union"), the Steamship Trade Association of Baltimore, Inc. ("STA") and its member-employer, P&O Ports Baltimore, Inc. ("Company") for the purpose of resolving and settling the May 2006 grievance known as "Proposed New Technology" and for the purpose of promoting a harmonious relationship between the parties.  In consideration of the mutual promises contained herein, the parties agree as follows:

1. The ILA Local 953 jurisdiction remains unaffected by this settlement.

2. The Company shall be permitted to install an OCR system and pedestals equipped with bar-code scanners at all outbound lanes at SMT.

3. The information that is captured by the OCR system and the bar code scanners, which it converts to data that is transmitted to the Navis terminal operating system, must have, at a some point in the process, been inputted by employees represented by the Union.

4. In exchange for the foregoing, the Union shall withdraw the grievance.

FOR THE STA:

Dated: 8-2-06

Michael P. Angelos
President

FOR THE UNION:

Dated: 8-2-06

Richard P. Hughes, Jr.
Business Agent

FOR THE COMPANY:

Dated: 8/2/06

Mark Montgomery
Sr. Vice President – East Coast Ops.
P&O Ports Baltimore, Inc.

# Seagirt "Out Bound" Gate Procedures

Upon arrival at the outbound pedestal, the truck driver must swipe one of his bar coded routing tickets in order to receive a Trailer Interchange Receipt ("TIR")/gate pass. "Express" will process any valid transactions to complete the transaction. A final TIR slip(s)/gate pass will be printed for the truck driver's records at the outbound pedestal.

If a "trouble" status occurs, the truck driver will be prompted to pick up the telephone at the pedestal. The trouble transaction will be queued for the next available Local 953 Pre-check Clerk to select to resolve or for the Pre-check Clerk to instruct the truck driver to return to the terminal for final resolution prior to departure.

After the truck driver collects the final TIR/gate pass slip(s), the driver will move to "Out Bound 2," where a Local 953 TIR Checker will visually verify that the driver has completed the transaction(s) and possesses a valid TIR/gate pass.

If there is no seal on the container, or there is an improper seal (i.e. the seal does not match the seal number printed on the outbound TIR slip), a Local 953 TIR Checker will update Express with the correct seal number and will inform security. Security will log the container and new seal number on its log report. The driver may request MDOT police to issue a police report concerning the missing or improper seal before leaving with the container. Security personnel will check that the truck driver is in possession of a valid gate pass before permitting the truck to exit Seagirt and proceed to public roadways.

FOR THE STA:                                    FOR THE UNION:

_____ Dated: _____          _____ Dated: _____
Michael P. Angelos                              Richard P. Hughes, Jr.
President                                       Business Agent

FOR THE COMPANY:                         :

_____ Dated: _____
Mark Montgomery
Sr. Vice President – East Coast Ops.
P&O Ports Baltimore, Inc.

## SEAGIRT ADDENDUM AGREEMENT

**WHEREAS,** there is in effect a Collective Bargaining Agreement between the Steamship Trade Association of Baltimore, Inc., on behalf of its members, and the International Longshoremen's Association, AFL-CIO, and its affiliated Local 953, and

**WHEREAS,** the aforesaid parties desire to supplement the provisions of said agreement with respect to manning requirements at the Seagirt Marine Terminal for P&O Ports Baltimore, Inc.

**WHEREFORE,** in consideration of the above recitals, which are incorporated herein by reference, it is **AGREED:**

1.  The provisions of this Addendum Agreement shall apply only to the following Steamship Lines;

> Atlantic Container Line
> Mediterranean Shipping Company
> Maersk/Sealand Lines
> Safmarine
> Evergreen
> Lloyd Tristino
> Hatsu Marine
> American President Lines
> Chilean Line
> Libra
> Montemar
> C.M.A.
> CCNI Line
> Alianca Line
> Columbus Line
> Crowley American Transport
> P&O Nedlloyd
> China Overseas Shipping
> K Line
> Yang Ming Lines
> Hanjin Lines
> Senator Lines
> Hyundai Lines
> Lykes Lines
> Mitsui Lines
> China Shipping
> Zim Lines
> Norasia
> Pan Am
> Hapag Lloyd

McAndrews Line
Australian New Zealand Line
Emirates

2.      In the event that any other Steamship Line utilizes Seagirt Marine Terminal or any of the Steamship Lines above terminates utilizing Seagirt Marine Terminal, or the volumes increase or decrease, the parties hereto will negotiate with respect to additional Addendum Agreements to cover manning requirements for those Steamship Lines and if agreement is reached, said agreement will be set forth in additional Addendum Agreements.

3.      One (1) Chief Clerk shall be employed to service all of the Steamship Lines set forth in 1 above.

4.      The following additional complement of employees shall be employed to service all of the Steamship Lines set forth in 1 above.

Four (4) – Assistant Chief Clerks

Five (5) – Precheck Clerks including one (1) who gets paid as a Weigher.

Four (4) – Customer Service/Billing Clerks.

Five (5) – TIR Checkers, one to work outbound.

Five (5) – Checkers shall be employed and will assist in the following clerical functions in joint agreement with the Chief Clerk:  Assistant Chief Clerk, Precheck Clerk, TIR Checker and Customer Service/Billing Clerk.

One (1) – Mount/Ground Checker for each Mount/Ground operation. (see definition in Local Agreement, Article 1 D. 4.)

Three (3) – Lot Location Clerks.

5.      Additional employees may be employed at the discretion of the employer to service the Steamship Lines set forth in 1 above.

6.      In addition to the normal day shift of 8:00 a.m. to 5:00 p.m., there shall be day shifts of 6:00 a.m. to 3:00 p.m., 7:00 a.m. to 4:00 p.m. and 9:00 a.m. to 6:00 p.m., Monday through Friday. Work by all employees during these shifts shall be paid at the straight time rate with one hour being paid for at time and one quarter the employee's straight time rate of pay. The number of persons and the identities of the persons who are assigned to those shifts shall be jointly agreed upon by the Terminal Manager and Chief Clerk.

7.      This Addendum Agreement shall supersede and replace any previous addendum agreements entered into between the parties covering manning requirements at Seagirt Marine Terminal for P&O Ports Baltimore, Inc. ("P&O Ports").

8.      The manning levels above are based on the current operating conditions at the terminal.  Where new devices and new methods are intended to be utilized by P&O Ports within its terminal operations, the provisions of the Final New Technology Master Contract Language shall apply.

9.      If the OCR system and/or bar code scanners are implemented at the Inbound Gate, the then existing manning levels shall remain the same.

10.     This Addendum Agreement shall remain in effect for the duration of the aforesaid Collective Bargaining Agreement to which it is an addendum provided, however, that either party hereto may cancel the Addendum Agreement at any time prior to the termination date of the aforesaid Collective Bargaining Agreement by giving ninety (90) days written notice to the other party. Upon termination of this Addendum Agreement, both parties agree to revert back to the Local Contract between Local 953 and the Steamship Trade Association of Baltimore, Inc.

11.     No provision within this Addendum may supersede any provisions contained within the Master Contract.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this _____ day of _____, 2006.

Steamship Trade Association                 International Longshoremen's
Of Baltimore, Inc. on                       Association, AFL-CIO
Behalf of its Members

By: _____(SEAL)                 By: _____(SEAL)
      President                                   Vice-President


                                            Local 953
                                            International Longshoremen's
                                            Association, AFL-CIO

                                            By: _____(SEAL)   8-2-06
                                                  Business Agent

**EXHIBIT F**

**DATE:**     February 12, 2008

**TO:**     Respondent:     United States Maritime Alliance, Ltd.
c/o James A. Capo, Chairman & Chief Executive Officer
100 Wood Avenue South , Suite 410, Iselin, NJ 08830

**FROM:**     Claimant:     International Longshoremen's Association, AFL-CIO
17 Battery Place, Suite 930, New York, New York  10004

The named claimant, the International Longshoremen's Association, AFL-CIO (herein the "ILA") is a party to a collective bargaining agreement (the "Master Contract") with the named Respondent United States Maritime Alliance, Ltd. (herein "USMX"). Article XII, Section 6, of the Master Contract establishes the right to arbitrate. Pursuant to this section, the ILA demands arbitration.

**NATURE OF THE DISPUTE**: Members of USMX in the Port of Baltimore have infringed upon the ILA's contractual work jurisdiction relating to the delivery of containers and inspection of container seals in violation of Article VII, Sections 1, 2 and 4, Article VIII, Sections 1 through 3, and Appendix A of the Master Contract.

**THE RELIEF SOUGHT**: The ILA seeks liquidated, money damages in the amount of one thousand dollars ($1,000.00) per occurrence, pursuant to Section 9 of Appendix A of the Master Contract.

**HEARING LOCALE**:   17 Battery Place, New York, New York  10004

You are hereby notified that copies of the Master Contract and this demand are being filed with Arbitrator John E. Sands, with a request that he commence administration of the arbitration. Under the Rules of the American Arbitration Association, you may file an answer within ten (10) days after notice from the arbitrator.

**Signed:**     Marrinan & Mazzola Mardon, P.C.

*John P. Sheridan*

John P. Sheridan
26 Broadway, 17th Floor
New York, New York  10004
(212) 425-3240

Attorneys for the International Longshoremen's
Association, AFL-CIO

**EXHIBIT G**

# MARRINAN & MAZZOLA MARDON, P.C.

ATTORNEYS AT LAW

26 BROADWAY, 17TH FLOOR

NEW YORK, NEW YORK 10004

TELEPHONE
(212) 425-3240

FACSIMILE
(212) 943-6649

JOHN P. SHERIDAN
jsheridan@mmmpc.com

March 18, 2008

*VIA FACSIMILE (973) 224-2226*

John E. Sands, Esq.
200 Executive Drive, Suite 100
West Orange, NJ 07052

Re:    International Longshoremen's Association, AFL-CIO and
United States Maritime Alliance, Ltd. –
<u>Regarding Inspection of Container Seals, Port of Baltimore</u>

Dear Arbitrator Sands:

       As you are aware, this office represents the International Longshoremen's Association, AFL-CIO. ("ILA") Approximately one month ago we submitted a demand for arbitration with regard to the issue referenced above, and we were offered dates by your office. At that time, it is our understanding that Respondent's counsel asked that the arbitration be held in abeyance because the parties disagreed as to whether the Master Contract should apply to the above-referenced dispute.

       The parties have been unable to resolve this preliminary issue as to whether the Master Contract applies. Accordingly, the ILA requests your intervention in adjudicating this threshold dispute, and because the ILA is confident that the dispute arises under the Master Contract, we ask that you schedule a date to hear the merits as well. We are ready to address these issues at your earliest convenience. Thank you.

Very truly yours,

John P. Sheridan

John P. Sheridan

JPS/lc
cc:    William M. Spelman, Esq., The Lambos Firm *(VIA FACSIMILE)*
      Mr. Richard P. Hughes, Jr., Pres., ILA, AFL-CIO
      Mr. Harold J. Daggett, Exec. Vice-Pres., ILA, AFL-CIO
      Mr. Robert E. Gleason, Sec.-Treas., ILA, AFL-CIO
      Mr. Benny Holland, Jr., Gen. Vice-Pres., ILA, AFL-CIO
      Mr. Gerald Owens, Gen. Org., ILA, AFL-CIO
      Mr. John D. Baker, Asst. Gen. Org., ILA, AFL-CIO

**EXHIBIT H**

# THE LAMBOS FIRM

ATTORNEYS AT LAW

C. PETER LAMBOS (1926-2003)
RICHARD P. LERNER
DONATO CARUSO
WILLIAM M. SPELMAN
NICHOLAS G. MAGLARAS (1951-2006)
CAROL N. LAMBOS*◊*^
PETER C. LAMBOS (1954-1991)

ANN MARIE FLYNN
RICHARD J. CIAMPI, JR.◊
JAMES R. CAMPBELL◊

ALSO ADMITTED IN CT* NJ◊ FL* DC^

29 BROADWAY • 9TH FLOOR
NEW YORK, NY 10006-3101

212.381.9700 • 212.943.2470
FAX: 212.797.9213 • 212.269.0172

PAMRAPO FINANCIAL CENTER
595 AVENUE C
BAYONNE, NJ 07002
201.823.1000
FAX: 201.823.3097

WWW.LAMBOSFIRM.COM

March 26, 2008

**Via Facsimile (973-324-2226)**
  **& First Class Mail**
John E. Sands, Esq.
200 Executive Drive, Suite 100
West Orange, New Jersey 07052

**Re:     ILA/USMX – Inspection of Container Seals, Port of Baltimore**

Dear Arbitrator Sands:

   The International Longshoremen's Association, AFL-CIO (ILA), has submitted a demand for arbitration in the above-referenced matter.  It is the position of United States Maritime Alliance, Ltd. (USMX) that the matter is not subject to arbitration between USMX and the ILA under the Master Contract.

   During a conference call yesterday morning, you informed the parties that the administration and management of the arbitration proceeding would be held in abeyance to allow USMX a reasonable period of time to file a court action seeking a stay of the arbitration.  You also stated that the court's decision concerning the arbitrability of the dispute would determine whether the arbitration will proceed.

   The respective counsel for the ILA and USMX have agreed that the deadline for USMX to file and serve a court action is April 24, 2008.

Sincerely,

William M. Spelman

cc:     John P. Sheridan, Esq. (via facsimile and by hand)

90910

**EXHIBIT I**

C. PETER LAMBOS (1923-2003)
RICHARD P. LERNER
DONATO CARUSO
WILLIAM M. SPELMAN
NICHOLAS G. MAGLARAS (1951-2006)
CAROL N. LAMBOS *◊*^
PETER C. LAMBOS (1954-1991)

ANN MARIE FLYNN
RICHARD J. CIAMPI, JR.◊
JAMES R. CAMPBELL◊

ALSO ADMITTED IN CT* NJ◊ FL* DC^

# THE LAMBOS FIRM

ATTORNEYS AT LAW

29 BROADWAY • 9TH FLOOR
NEW YORK, NY 10006-3101

212.943.2470 • 212.381.9700
FAX: 212.797.9213 • 212.269.0172

PARRAPO FINANCIAL CENTER
595 AVENUE C
BAYONNE, NJ 07002
201.823.1000
FAX: 201.823-3097

WWW.LAMBOSFIRM.COM

April 23, 2008

**Via Facsimile (973-324-2226)
& First Class Mail**
John E. Sands, Esq.
200 Executive Drive, Suite 100
West Orange, New Jersey 07052

Re:     **ILA/USMX – Inspection of Container Seals, Port of Baltimore**

Dear Arbitrator Sands:

By letter dated March 26, 2008, a copy of which is enclosed, we informed you of the April 24, 2008, deadline for United States Maritime Alliance, Ltd. (USMX) to commence a court action and serve upon the International Longshoremen's Association, AFL-CIO (ILA) the requisite papers. USMX and the ILA have agreed to extend the deadline until May 1, 2008.

Sincerely,

William M. Spelman

cc:     John P. Sheridan, Esq. (via facsimile and by hand)

90910

# THE LAMBOS FIRM

ATTORNEYS AT LAW

C. PETER LAMBOS (1926-2003)
RICHARD P. LERNER
DONATO CARUSO
WILLIAM M. SPELMAN
NICHOLAS G. MAGLARAS (1951-2006)
CAROL N. LAMBOS*◊•^
PETER C. LAMBOS (1954-1991)

ANN MARIE FLYNN
RICHARD J. CIAMPI, JR.◊
JAMES R. CAMPBELL◊

ALSO ADMITTED IN CT* NJ◊ FL• DC^

29 BROADWAY • 9TH FLOOR
NEW YORK, NY 10006-3101

212.381.9700 • 212.943.2470
FAX: 212.797.9213 • 212.269.0172

PAMRAPO FINANCIAL CENTER
595 AVENUE C
BAYONNE, NJ 07002
201.823.1000
FAX: 201.823.3097

WWW.LAMBOSFIRM.COM

March 26, 2008

**Via Facsimile (973-324-2226)**
  **& First Class Mail**
John E. Sands, Esq.
200 Executive Drive, Suite 100
West Orange, New Jersey 07052

Re:  **ILA/USMX – Inspection of Container Seals, Port of Baltimore**

Dear Arbitrator Sands:

The International Longshoremen's Association, AFL-CIO (ILA), has submitted a demand for arbitration in the above-referenced matter. It is the position of United States Maritime Alliance, Ltd. (USMX) that the matter is not subject to arbitration between USMX and the ILA under the Master Contract.

During a conference call yesterday morning, you informed the parties that the administration and management of the arbitration proceeding would be held in abeyance to allow USMX a reasonable period of time to file a court action seeking a stay of the arbitration. You also stated that the court's decision concerning the arbitrability of the dispute would determine whether the arbitration will proceed.

The respective counsel for the ILA and USMX have agreed that the deadline for USMX to file and serve a court action is April 24, 2008.

Sincerely,

William M. Spelman

cc:  John P. Sheridan, Esq. (via facsimile and by hand)

90910